# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HOENIG DEVELOPMENTS, INC. and
HOENIG DEVELOPMENTS, LLC,

       Plaintiffs,                              Case Number 13-CV-15138
                                                Honorable Denise Page Hood

v.

DIAL INDUSTRIES, INC.,

       Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR CHANGE OF VENUE

Before the Court is Defendant, Dial Industries, Inc.'s, Motion to Dismiss and/or For Change of Venue Improperly Laid, or in the Alternative, for Change of Venue for the Convenience of the Witnesses and Parties and in the Interests of Justice **[Docket No. 9, filed January 24, 2014]**. Plaintiffs filed a Response in Opposition to this Motion on February 24, 2014, **[Docket No. 14]** to which Defendant filed a Reply **[Docket No. 15, filed March 10, 2014]**.

**I.    BACKGROUND**

Plaintiff Hoenig Developments, Inc. ("Hoenig Inc.") is a corporation that is organized and exists under Canadian law but maintains a place of business in Oakland Township, Michigan. Plaintiff Hoenig Developments, LLC ("Hoenig LLC") is a limited liability company that is organized and exists under Michigan law. Hoenig LLC also maintains a place of business in Oakland Township,

Michigan and Plaintiff asserts that there are no members of Hoenig LLC that are residents of California.  Defendant Dial Industries, Inc. ("Dial") is a corporation organized and existing under California law that maintains a place of business in Los Angeles, California.

Plaintiffs Hoenig LLC and Hoenig, Inc. (hereinafter "Plaintiffs") claim that in or around 2000, Peter Hoenig, a retired Canadian schoolteacher and inventor, "designed and invented a drawer organizer device that he named the 'DREAM DRAWER.'"  On or about January 24, 2002, Mr. Hoenig filed a provisional patent application with the U.S. Patent and Trademark Office ("USPTO"), and received a patent which designated it as U.S. Patent Application 601351,541 **[Compl. ¶10]**.  On or about January 17, 2003, Mr. Hoenig filed a regular utility patent application with USPTO entitled "Drawer Organizer," which designated it as U.S. Patent Application 101347,049.  Plaintiffs contend that the "'049 application claims the benefit of the earlier filing date of January 24, 2002 for the '541 provisional application" **[Compl. ¶ 11]**.

On or about January 31, 2006, Plaintiff states that the USPTO issued a U.S. Patent 6,997,307 to Mr. Hoenig for the "Drawer Organizer" device**. [Docket No. 1, Exhibit A - the '307 Patent]** Mr. Hoenig then assigned all his rights, title, and interest in the '307 Patent to Hoenig, Inc. which assigned its rights to Hoenig LLC **[Compl. ¶ 13-14]**.  Plaintiffs claim that they have used the mark "DREAM

DRAWER" since at least November 2001 in connection with its patented Drawer Organizer device, acquiring "rights in the word mark" and "gain[ing] great recognition for such use" **[Compl. ¶ 15]**. Plaintiffs also contend that the word mark "DREAM DRAWER" is "inherently distinctive and/or has become distinctive through its acquisition of secondary meaning" **[Compl. ¶ 16]**.

On December 18, 2002, Plaintiffs and Defendant Dial entered into a license agreement in which Plaintiffs granted Defendant an exclusive license to manufacture, market, and sell the patented Drawer Organizer device and use Plaintiff's "DREAM DRAWER" word mark **[Compl. ¶ 20-21]**. In exchange, Defendant was to, among other things, pay Plaintiffs "10% of the Net Sale Price (as determined in accordance with generally accepted accounting principles, GAAP) the Licensee or any of its subsidiaries is receiving for the [patented Drawer Organizer device]" **[Compl. ¶ 22; Ex. B at ¶ 4]**. Plaintiffs assert that they were also to receive a royalty of 17% of the net sales of devices that were sold outside of the United States **[Comp. ¶ 23]**. The license agreement was written for a term of twenty (2) years unless the agreement was "terminated for reasons of default" **[Docket No. 1, Ex. B. at ¶ 9]**.

In or around November 2003, Plaintiffs allege that Defendant began to sell its patented product **[Compl. ¶ 28]**. For a period of time, Plaintiffs received their payment under the agreement **[Compl. ¶ 30]**. However, some time in 2010,

3

Plaintiffs contend that Defendant Dial began to develop and implement a plan to "increase profitability in part by decreasing costs" which included reducing the amount that it paid to business partners including Plaintiffs **[Compl. ¶ 31]**. Plaintiffs claim that Defendant "resolved to attempt to create a copy drawer organizer device that is substantially and confusingly similar to Hoenig's patented Drawer Organizer device" and began to call its devices "DREAM DRAWER" **[Compl. ¶ 32-33]**. Plaintiffs further contends that Defendant improperly filed an application with the USPTO to register the "DREAM DRAWER" mark that Defendant was only allowed to use as a part of its licensing agreement while knowing that Plaintiffs continuously used the mark since 2001 **[Compl. ¶ 33-35]**. Plaintiffs claims that as a result, the amount that they received from Defendant decreased and Defendant's wrongful actions, including its improper trademark, caused Plaintiffs to incur money damages **[Compl. ¶ 37-39]**.

Plaintiffs' Complaint alleges five claims for relief: Count I - Trademark Infringement Under 15 U.S.C. § 1125(a); Count II - Breach of Contract; Count III - *Quantum Meruit*/ Unjust Enrichment; Count IV - Cancellation of Trademark; and Count V - Request for Accounting. Plaintiffs contend that this Court has jurisdiction over the Defendant "consistent with the requirements of due process because, for example, (1) Defendant Dial purposefully availed itself of the privilege of conducting business activities in Michigan by conducting business

4

with at least one Michigan company, Hoenig, LLC, thereby invoking the benefits and protections of Michigan's laws; (2) Plaintiffs' claims arise from the activities of Defendant Dial in Michigan; and (3) this Court's exercise of jurisdiction over Defendant Dial is reasonable because Michigan has a manifest interest in providing effective means of redress to Plaintiffs as Michigan is the place where harms occurred" **[Docket No. 1, Pg ID 2]**. Plaintiffs claim that Defendant "has systematic and continuous contacts with the State of Michigan" and that venue is proper in this Court pursuant to 28 U.S.C. § 139l(b) **[Id.]**. Plaintiffs also claim jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1125(a).

In its Motion to Dismiss or for Change of Venue, Defendant argues the facts in this case are such that a "substantial part" of the alleged actions did not occur within the Eastern District of Michigan **[Docket No. 9, Pg ID 81]**. Defendant contends that this matter should be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(A), for the convenience of the parties and the witnesses as well as in the interest of justice **[Id. at 82]**. Specifically, Defendant relies on the Affidavit of John Macho **[Docket No. 9, Exhibit 2]** in which Mr. Macho states that more than just a "substantial part" of the events that gave rise to the purported claims of the Plaintiffs' occurred at Defendant Dial's operations and facilities in the Los Angeles, California. This included Defendant Dial's decision, and execution on its decision, to replace the

Hoenig Dream Drawer with its own product, the decision makers, and the execution of their decisions all occurred at Dial's operations and facilities in the Los Angeles, CA area. This also included, according to Mr. Macho, Defendant's decision, and action, to trademark the phrase "DREAM DRAWER," because the decision makers, and the execution of their decisions all occurred at Defendant Dial's operations and facilities in Los Angeles, California.

The plaintiff bears the burden of establishing jurisdiction. *Third National Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied*, 493 U.S. 1058 (1990). The procedure for deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) in the Sixth Circuit is set forth in *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989). The court may determine the motion on the basis of the submitted affidavits alone, it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing, either pretrial or during trial, on the merits of the motion. *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)). If the written submissions raise disputed issues of fact or require determinations of credibility, the court may order a hearing. *See id.* The plaintiff then must prove that jurisdiction exists by the same standard that would apply if the matter were deferred to trial: the preponderance of the evidence. *Serras*, 875 F.2d at 1214 (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert.*

*denied*, 450 U.S. (1981) (stating that "the plaintiff must show by a preponderance of the evidence that jurisdiction exists").

"If the court rules on written submissions alone, it must 'consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Id.* (quoting *Welsh*, 631 F.2d at 436). Plaintiff "may not rest on his or her pleadings to answer affidavits submitted by the movant, but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction.'" *Serras*, 875 F.2d at 1214 (citation omitted). However, Plaintiff's burden is merely to make a *prima facie* showing that personal jurisdiction exists. *See Id.* If plaintiff meets that burden, the motion to dismiss should be denied, "notwithstanding any controverting presentation by the moving party." *Id.* (quoting *Marine Midland Bank*, 664 F.2d at 904).

In a diversity action (here, Plaintiffs a Canadian Corporation and a Michigan LLC and Defendant a California corporation), the issue of whether a federal court has personal jurisdiction over a defendant is determined by applying the law of the state in which the court sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (noting that "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). In addition, the court must consider whether constitutional due process permits personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.

1991). The relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

The state of Michigan's long-arm statute on personal jurisdiction over corporations provides that limited or "specific" jurisdiction may be exercised where a specified relationship exists between a corporation and the forum. M.C.L. 600.715, provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> 1. The transaction of any business within the state.
> 2. The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> 3. The ownership, use, or possession of any real or tangible personal property situated within the state.
> 4. Contracting to insure any person, property, or risk located within this state at the time of contracting.
> 5. Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

*Id.*

Here, Plaintiffs argue that Defendant's business dealings in the State of Michigan, including its contractual relationships and selling of goods at stores within the state, give rise to limited personal jurisdiction pursuant to M.C.L. 600.715, having made "the transaction of any business within the state." The Sixth Circuit has held that "if [a] defendant conducted even the slightest act of business in Michigan, the first statutory criteria for personal jurisdiction under section 600.715(1) is satisfied." *Lanier v. American Board of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

The Court must also determine whether due process permits personal jurisdiction over Defendant, a non-resident, who is not generally engaged in activities within the State of Michigan. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if [it] be not present within the territory of the forum, [it] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. at 316 (citation omitted). The Supreme Court has determined that one way to measure fairness is to consider whether the defendant's conduct is such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980). The court must specifically consider three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state.
> Second, the cause of action must arise from the defendant's activities there.
> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum jurisdiction to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460.

The Sixth Circuit has explained that a defendant must have "'purposefully directed' his activity at residents in the forum" to meet the "fair warning" requirement. *Lanier*, 843 F.2d at 910. Specifically, the court noted:

> By "purposefully availing" itself of opportunities in the forum, such as by purposefully directing itself to forum residents, a defendant opens itself up to that forum's jurisdiction. "[W]here the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations,' between [it]self and residents of the forum . . . [it] manifestly has availed [it]self . . . and . . . it is presumptively not unreasonable to require [it] to submit to ... litigation in that forum . . . ."

*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Here, the Court is satisfied that Defendant has "purposely availed" itself of the privilege of acting in this forum. The Court further examined what must be satisfied to determine that an action "arise[s] from" a defendant's contacts with the forum. The court concluded that the "arising out of" requirement of the long-arm statute was satisfied if the cause of action was "made possible by" or "lies in the wake of"

the defendant's state contacts. *Lanier*, 843 F.2d at 909. It is "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Southern Machine Company v. Mohasco Industries*, 401 F.2d 374, 384, n.29 (6th Cir.1968). However, "[d]istrict courts should give deference to a plaintiff's choice of venue." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 658 (E.D. Mich. 1992). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum…" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

As to Defendant's claim for a change of venue, in a diversity action, venue is appropriate in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). The determination that this Court has jurisdiction over the Defendant thus establishes this district as an appropriate venue.

The Defendants request that if the Court should determine that venue is proper in this Court that the Court exercise its discretion to change venue for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). The Defendants request a transfer to the United States District Court for the Central

District of California, Western Division. 28 U.S.C. § 1404(a) provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). It is within the broad discretion of the trial court to transfer an action under § 1404 (a). Generally such a transfer is ordered to avoid delay, protect parties and witnesses, to avoid undue expense and inconvenience. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 35 (1955). A plaintiff's choice of forum must be given weight in the decision to transfer venue, but is not dispositive. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).

A number of factors are relevant to the determination of whether a case should be transferred under § 1404(a):

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994).

Relative to the convenience of the parties and witnesses, it is clear that the Defendant would find it more convenient to litigate this matter in California. The Defendant's business is located in California and Defendant asserts its many potential witnesses, employees, and vendors are located in California. Defendant relies on the affidavit of John Macho, Vice President of Defendant, for this information. In his affidavit, Mr. Macho does indicate there are many potential witnesses, but lists other than himself and the co-owner, Jan Macho, only five other witnesses by name or position with the company. Similarly, Plaintiffs would find it most convenient to litigate near their place of residence in Michigan. Plaintiffs assert that while Defendant has Michigan contacts, Plaintiffs have no California contacts. Plaintiffs also note that Defendant is a multinational company doing business all over the world and litigating in California would be more burdensome to Plaintiffs than to Defendant. Plaintiffs also argue that there is no inconvenience to non-party witnesses who are national or multinational retailers throughout the world. The factor of convenience to parties and witnesses does not weigh heavily in favor of Defendant, the Defendant having identified only a handful of specific witnesses that would be inconvenienced and Defendant itself being only slightly inconvenienced. Transfer of venue is not appropriate if it merely transfers inconvenience from one party to the other. *International Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995).

Considering the location of relevant documents and the relative ease of access to sources of proof, the Court notes that modern technology has made the discovery and sharing of documents easier and more efficient. No longer is location a major factor in document discovery and sharing. *General Motors Co. v. DiNatale*, 705 F. Supp 2d 740,749 (E.D.Mich. 2010). Defendant has failed to indicate anything other than documents and a few witnesses (Defendant's brief says nine witnesses, but the affidavit of Macho lists only five other than himself and his father) that would cause the transfer to California to be more convenient. This factor does not weigh heavily in favor of transfer.

Regarding the availability of process to compel the attendance of witnesses and the costs of securing testimony from witnesses, Defendant argues that the costs to Defendant to secure its employees as witnesses and to compel its customer witnesses is greater than Plaintiffs' costs to appear in California. While Defendant has indicated its vendors would appear as witnesses, it lists none. Weighing the cost to produce its own employees against the Plaintiffs' appearance only shifts inconvenience. The costs for vendors or customers to attend trial in Michigan or California, or the inconvenience to them are not supported by Defendant, through affidavit or otherwise.

Defendant's arguments regarding the practical problems associated with trying the case in the least expensive and most expeditious fashion center on their

arguments made above in support of accessibility of witness and the cost of securing their attendance.  The Court notes that argument does not support this factor weighing in favor of Defendant.

Relative to the interests of justice, Defendant argues that venue in this court is "remote" from Defendant's residence and where the "acts" underlying the controversy occurred, citing the Federal Circuit.  *Mosaid Technologies, Inc. v. Sony Ericsson Mobile Communications (USA), Inc.*, 885 F. Supp. 2d 720, 723 (D Del 2012).  Plaintiffs respond that as Defendant is a resident of Michigan for purposes of determining venue, this matter should remain in this Court, as the injury from trademark infringement takes place in the state where the trademark owner resides, citing *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 815 (E.D. Mich. 2000).

Defendant indicates that other factors a Court should consider are cited in *General Motors Co. v. Dinatale*, 705 F. Supp. 2d 740 (E.D. Mich. 2010).  These factors do not substantially favor Plaintiffs or Defendant in this case, and should not have an impact on the decision to transfer venue.  Defendants agree that the factors of relative congestion of the courts, the public's interest in having local controversies adjudicated locally, and the relative familiarity of the two courts with the applicable law do not favor transfer.  Finally, returning to the consideration of Plaintiffs' original choice of venue, none of the other factors weigh heavily against

venue in this district. Defendant's request for change of venue under 28 U.S.C. § 1404(a) is **DENIED**.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss and/or For Change of Venue Improperly Laid, or in the Alternative, for Change of Venue for the Convenience of the Witnesses and Parties and in the Interests of Justice **[Docket No. 9, filed January 24, 2014]** is **DENIED**.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 27, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager